### SALLA et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. October 1, 1900.)

#### No. 600.

POST OFFICE — CONSPIRACY TO OBSTRUCT PASSAGE OF MAILS.— ELEMENTS OF OFFENSE.

An indictment charging defendants with conspiring "to unlawfully, willfully, maliciously, and knowingly" delay and obstruct, etc., the passage of a railway car and train, "which said railway car and train were then and there carrying and transporting the mails of the United States," is insufficient to charge a conspiracy to violate Rev. St. § 3995, by "knowingly and willfully" obstructing the passage of the mails, since it fails to charge that defendants knew that said car and train were carrying the mails, without which there could be no conspiracy to violate the statute.

In Error to the District Court of the United States for the District of Idaho.

The plaintiffs in error seek to review the judgment of the district court of the United States for the district of Idaho in a case in which they were con-

victed of a conspiracy to commit an offense against the United States. The facts on which the indictment was based are the following: On April 29, 1899, the Northern Pacific Railway train was boarded by a large number of armed men at different points between the towns of Burke and Wallace. When the train reached Wallace some of these men compelled the engineer to run his train over the track of the Oregon Railroad & Navigation Company to Wardner Junction, a place about 12 miles west of Wallace. They then proceeded to the mill of the Bunker Hill & Sullivan Mining & Concentrating Company, near Wardner Junction, and destroyed it by the use of dynamite, after which they dispersed, and returned on the train towards Wallace and the points from which they had come. There were three counts to the indictment, but on the trial, at the conclusion of the evidence, the second and third counts were ordered dismissed. The indictment in the first count charged that the plaintiffs in error did "unlawfully, wickedly, and maliciously confederate and conspire together to commit an offense against the United States; that is to say, to unlawfully, willfully, maliciously, and knowingly delay, prevent, obstruct, and retard the movement and passage of a certain railway car and train over the lines and tracks of the Northern Pacific Railway Company, by the said Northern Pacific Railway Company, the said Northern Pacific Railway Company then and there being engaged in the business of a common carrier of the mails of the United States, which said railway car and train were then and there carrying and transporting the mails of the United States." The indictment then proceeded to charge the commission of an overt act in pursuance of said conspiracy. The plaintiffs in error demurred to the indictment, and, after verdict thereon, moved in arrest of judgment, upon the ground that the facts stated in said count of the indictment do not constitute a public offense.

Reddy, Campbell & Metson, for plaintiffs in error.
R. V. Cozier, for the United States.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

We think that on the authority of U. S. v. Carll, 105 U. S. 611, 26 L. Ed. 1135, and Pettibone v. U. S., 148 U. S. 197, 13 Sup. Ct. 542, 37 L. Ed. 419, the indictment is insufficient to sustain the judgment. In U. S. v. Carll the indictment was found under section 5431 of the Revised Statutes, which denounces a penalty against "every person who, with intent to defraud, passes, utters, publishes, or sells, * * * any falsely-made, forged, counterfeited, or altered obligation, or other security of the United States." The indictment charged that the defendant "feloniously, and with intent to defraud the Bank of the Metropolis, * * * did pass, utter, and publish upon and to the said Bank of the Metropolis a falsely-made, forged, counterfeited, and altered obligation and security of the United States." It was held that the indictment was insufficient, even after verdict, for the reason that it did not allege that the defendant knew the obligation to be false, forged, or counterfeited. In delivering the opinion of the court, Mr. Justice Gray said:

"In an indictment upon a statute, it is not sufficient to set forth the offense in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished. * * * The language of the statute on which this indictment is founded includes the case of every person who, with intent to defraud, utters any forged obligation of the United States. But the offense at which it is aimed is similar to the

common-law offense of uttering a forged or counterfeit bill. In this case, as in .that, knowledge that the instrument is forged and counterfeited is essential to make out the crime; and an uttering, with intent to defraud, of an instrument in fact counterfeit, but supposed by the defendant to be genuine, though within the words of the statute, would not be within its meaning and object."

In Pettibone v. U. S. the defendants were indicted, under section 5440 of the Revised Statutes, for conspiring to commit an offense against the United States by violating section 5399, which provides as follows:

"Every person who corruptly, or by threats or force, endeavors to influence, intimidate, or impede any witness, or officer in any court of the United States, in the discharge of his duty, or corruptly, or by threats or force, obstructs or impedes, or endeavors to obstruct or impede, the due administration of justice therein, shall be punished by a fine of not more than five hundred dollars, or by imprisonment not more than three months, or both."

The indictment in that case alleged that the defendants unlawfully, willfully, and feloniously conspired, combined, and agreed to commit an offense against the United States, to wit, "to corruptly, and by force and threats, obstruct and impede the due administration of justice in the aforesaid United States circuit court for the Ninth judicial circuit, district of Idaho," by unlawfully, willfully, and feloniously, by force and violence and threats of violence, intimidating and compelling the employés of the Bunker Hill & Sullivan Mining & Concentrating Company to cease and abandon work in and upon the mines of said company and other property, which was alleged to be in violation of the terms of the injunction which had been issued from said circuit court of the United States for the district of Idaho, and directed to the plaintiffs in error. The court said:

"The construction that applies to the first branch of section 5399 must be applied to the second, and, if it were essential that the person accused should know that the witness or officer was a witness or officer in order to conviction of the charge of influencing, intimidating, or impeding such witness or officer in the discharge of his duty, so it must be necessary for the accused to have knowledge or notice or information of the pendency of proceedings in the United States court, or the progress of the administration of justice therein, before he can be found guilty of obstructing or impeding, or endeavoring to obstruct or impede, the same. * * * It seems clear that an indictment against a person for corruptly, or by threats or force, endeavoring to influence, intimidate, or impede a witness or officer in a court of the United States in the discharge of his duty, must charge knowledge or notice, or set out facts that show knowledge or notice, on the part of the accused that the witness or offi- cer was such.. And the reason is no less strong for holding that a person is not sufficiently charged with obstructing or impeding the due administration of justice in a court unless it appears that he knew, or had notice, that justice was being administered in such court."

The language so quoted from the Pettibone Case fully answers the question which is propounded in the present case. The indictment here charges a conspiracy to commit an offense against the United States by conspiring together to unlawfully prevent, delay, and obstruct a certain railway car and train which carried the mails of the United States. It does not charge that the conspiracy had for its purpose to knowingly obstruct the mails. If it had so charged, the word "knowingly" might be said to have implied an imputation of knowledge that the United States mails were upon the train.

The word "knowingly," as used in the indictment, refers only to the action of the defendants in delaying the passage of the certain railway car and train. It is alleged that they willfully and knowingly delayed and obstructed the movement of the train. While it is true that the laws make the railways of the United States postal roads for carrying the mail, and a large number of passenger trains are engaged in carrying the mail, it is nevertheless true that many passenger trains do not carry the mail. The defendants in this case are not charged with the overt act of obstructing the passage of the mails or a carrier of the mails, but with a conspiracy. It is the confederation and conspiracy to commit an offense against the United States that they are called upon to answer for. As charged in the indictment, the conspiracy is declared to have had for its purpose to knowingly hinder and delay the movement and passage of a certain railway car and train, which car it is subsequently alleged carried the mails of the United States. It is no offense against the United States to hinder and delay the passage of a railway car, and consequently it is no offense to conspire or confederate for that purpose. Such an offense must be dealt with under the laws of the state. The conspiracy, as charged in the indictment, lacks an essential ingredient to an offense against the United States, to wit, that the defendants knew that the mails of the United States were carried upon the train which they conspired to obstruct. It may be that they all had such knowledge, or that the facts and circumstances shown in the evidence were sufficient to charge them with such knowledge, but that does not dispense with the necessity of setting forth in the indictment all the elements of the wrongful act which they conspired to commit. Says Hawkins (book 2, c. 25, § 60): "In an indictment nothing material shall be taken by intendment or implication." The authorities above cited sustain the proposition that an indictment for a conspiracy to commit an offense against the United States must charge every element of the offense as fully as if the indictment were for its perpetration. The analogy between the indictment in this case and that in the Pettibone Case is complete. In the Pettibone Case the indictment was held fatally defective for its failure to allege that the defendants knew of the pendency of proceedings in the court and the issuance of the injunction. Without the knowledge that justice was being administered in the court, it was ruled that the defendants could not be charged with conspiring corruptly, or by force or threats, to obstruct or impede, or to endeavor to obstruct or impede, its due administration. The judgment is reversed, and the cause remanded, with instructions to quash the indictment and discharge the defendants.