CONRAD et al. v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. February 9, 1904.)

No. 1,286.

1. CONSPIRACY—OBSTRUCTION OF MAILS—INDICTMENT.

Rev. St. § 5440, as amended by Act May 17, 1879, c. 8, 21 Stat. 4, 1 Supp. Rev. St. 264 [U. S. Comp. St. 1901, p. 3676], provides that if two or more persons conspire either to commit any offense against the United States, or to defraud the United States, etc., and one or more do any act to effect the object of the conspiracy, all shall be liable to a penalty, etc. Section 3995 [U. S. Comp. St. 1901, p. 2716] declares that, if any person shall "knowingly and willfully" obstruct or retard the passage of the mails, he shall for every such offense be punished, etc. Held, that an indictment for conspiracy to commit the offense described in section 3995, which failed

to allege that defendants conspired to "knowingly and willfully" obstruct or retard the passage of the mails, in the manner set out, was fatally defective.

**2. SAME—OTHER ALLEGATIONS—CURING DEFECT.**

Where an indictment for conspiracy to knowingly and willfully obstruct the passage of the mails, in violation of Rev. St. § 5440, as amended by Act May 17, 1879, c. 8, 21 Stat. 4, 1 Supp. Rev. St. 264 [U. S. Comp. St. 1901, p. 3676], and section 3995 [U. S. Comp. St. 1901, p. 2716], was defective for failure to charge that defendants conspired to "knowingly and willfully" obstruct the mails, the defect was not cured by the allegation that they did "knowingly, unlawfully, and feloniously combine, conspire," etc., to obstruct the mails, or that the part of the indictment charging the overt act alleged that such act was "knowingly and willfully" committed.

Speer, District Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

J. R. Beckwith, Robert J. Maloney, J. A. Woodville, and M. R. Neuhauser, for plaintiffs in error.

W. W. Howe, U. S. Atty., and H. Generes Dufour, Asst. U. S. Atty.

Before McCORMICK and SHELBY, Circuit Judges, and SPEER, District Judge.

SHELBY, Circuit Judge. The plaintiffs in error were convicted in the Circuit Court. They made a motion in arrest of judgment, alleging that the indictment on which they were convicted was fatally defective. The indictment contains two counts, but the second is exactly like the first, except an immaterial difference in the averments relating to the overt act. We shall find it necessary to quote all of the first count, as we comment on the different parts of it.

The following is the statute providing for the punishment of certain conspiracies:

"If two or more persons conspire either to commit any offense against the United States or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty of not more than ten thousand dollars, or to imprisonment for not more than two years, or to both fine and imprisonment in the discretion of the court." Rev. St. U. S. § 5440, as amended by Act May 17, 1879, c. 8, 21 Stat. 4, 1 Supp. Rev. St. 264 [U. S. Comp. St. 1901, p. 3676].

It is aimed at those who conspire to commit any offense against the United States, or to defraud the United States. The charge here is that the conspiracy was to commit a specific offense against the United States. It follows that the indictment must charge that the defendants conspired, and that it must state what offense they conspired to commit. Their conspiring is stated in these words:

That Nic Conrad, and 16 others who are named, "on the 27th day of September, 1902, in the city of New Orleans, Eastern District of Louisiana, New Orleans Division, and within the jurisdiction of this court, did knowingly, unlawfully, and feloniously combine, conspire, and confederate together and with each other to commit an offense against the United States, to-wit."

The next step is to describe the offense they conspired to commit. To constitute a good indictment it must charge that the conspiracy was to do some act made a crime by the laws of the United States;

and it must state with reasonable certainty the acts intended to be carried out by the conspiracy, so that it can be seen that the object of the conspiracy was a crime against the United States. When the criminality of the conspiracy consists in an agreement to "compass or promote some criminal or illegal purpose, that purpose must be fully and clearly stated in the indictment." Pettibone v. United States, 148 U. S. 197, 203, 13 Sup. Ct. 545, 37 L. Ed. 419. So as to bring the words of the indictment close to the statute to which it is supposed to refer, we quote the statute, and follow it with the words of the indictment:

"Any person who shall knowingly and willfully obstruct or retard the passage of the mail, or any carriage, horse, driver, or carrier carrying the same, shall for every such offense, be punishable by a fine of not more than one hundred dollars." Rev. St. U. S. § 3995 [U. S. Comp. St. 1901, p. 2716].

Here is the part of the indictment describing the alleged purpose of the conspiracy:

"To obstruct and retard the passage of the mails of the United States, and the cars and vehicles carrying and engaged in carrying the letter carriers and their pouches containing said mail, to wit, to obstruct and retard the passage of the mail of the United States to and from the main post office of the United States in the city of New Orleans from and to the branch post offices or substations of the United States in said city, and to obstruct and retard the passage of the cars and vehicles carrying and engaged in carrying said mails of the United States to and from the main post office of the United States in the city of New Orleans, and from and to the branch post offices of said substations of the United States in said city, and carrying and engaged in carrying letter carriers and their pouches containing said mail for delivery in said city of New Orleans."

The statute, it will be observed, is aimed at those "who shall knowingly and willfully obstruct or retard the passage of the mail." The purpose and object of the conspiracy, as shown by the indictment, is "to obstruct and retard the passage of the mails," etc. We look in vain for any statement that the purpose of the conspiracy was to commit the crime denounced by the statute—to "knowingly and willfully" retard the passage of the mail. It is no violation of this statute to obstruct or retard the passage of the mail unless the act is done knowingly and willfully. To charge an offense under this statute, it would certainly be necessary to allege at least that the defendants "knowingly and willfully" did obstruct, etc. When the crime charged is a conspiracy to do a criminal act, it must be shown that the act which was the purpose of the conspiracy is a violation of law. Salla v. United States, 104 Fed. 544, 44 C. C. A. 26. It is often sufficient for the pleader to follow the statute, but sometimes that is not sufficient. United States v. Carll, 105 U. S. 611, 26 L. Ed. 1135. But we are not concerned with that question here, for this indictment does not even use the necessary statutory words in describing the crime which was the alleged purpose of the conspiracy. This defect in the indictment is clearly fatal, unless it can be aided by other parts of it. It is suggested that we can look to the part stating that the defendants combined, etc. It is true that it is stated that they "did knowingly, unlawfully and feloniously combine, conspire," etc., to commit an offense against the United States. These words, "knowingly," etc., form no possible part of the description of the crime which is the alleged purpose of the con-

spiracy. The indictment is not subject to a construction that would make these words relate to the description of the crime in question.

But it has been suggested that another part of the indictment contains language that will supply the defect:

"And thereafter, to wit, on the 29th day of September, 1902, at the Arabella Barn, corner Magazine and Joseph streets, in the city of New Orleans, Eastern District of Louisiana, New Orleans Division, and within the jurisdiction of this court, the said Nic Conrad [and 10 others, naming them] did knowingly, unlawfully, and feloniously, and for the purpose of effecting and with intent to effect the objects of said conspiracy, obstruct and retard the passage and delivery of the mail of the United States from the main post office of the United States in the city of New Orleans to the branch post office of the United States, situated corner Dryades and Euterpe streets, and the branch post office of the United States, corner Carrollton avenue and Maple street, and the branch post office of the United States, corner Magazine and Louisiana avenue, in the city of New Orleans, by obstructing, impeding, interfering with, and stopping, at the time and place aforesaid, a certain street railway car, controlled and operated by the New Orleans Railways Company, which car was then and there on its way to the main post office of the United States for the purpose of receiving the mail of the United States, and carrying, transporting, and delivering same to the branch post office of the United States, corner Dryades and Euterpe streets, and the branch post office of the United States, corner Carrollton avenue and Maple street, and the branch post office of the United States, corner Magazine and Louisiana avenue, as the aforesaid Nic Conrad [and 10 others, naming them] then and there well knew, and which said car, engaged in the service of carrying the mails of the United States as aforesaid, bore the sign, in large and conspicuous letters, 'U. S. Mail,' the aforesaid persons then and there and thereby intending to obstruct and retard the passage of the said mails, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States."

The statute against conspiracies, which we have already quoted, is so written that its penalty is not incurred unless "one or more" of the parties to the conspiracy do some act in furtherance of the conspiracy. The part of the indictment last quoted is intended to show the commission of an overt act. It alleges that 11 of the 17 defendants indicted committed certain overt acts therein described. It has been clearly settled that this part of the indictment cannot be looked to to remedy the defects to which we have referred. "The offense charged in the counts of this indictment is a conspiracy. This offense does not consist of both the conspiracy and the acts done to effect the object of the conspiracy, but of the conspiracy alone. The provision of the statute, that there must be an act done to effect the object of the conspiracy, merely affords a locus pœnitentiæ, so that, before the act done, either one or all of the parties may abandon their design, and thus avoid the penalty prescribed by the statute. It follows, as a rule of criminal pleading, that, in an indictment for conspiracy under section 5440, the conspiracy must be sufficiently charged, and that it cannot be aided by the averments of acts done by one or more of the conspirators in furtherance of the object of the conspiracy." United States v. Britton, 108 U. S. 199, 204, 2 Sup. Ct. 534, 27 L. Ed. 698.

The motion in arrest of judgment should have been granted. The judgment of the Circuit Court is reversed, and the cause remanded, with instructions to release and discharge the defendants—plaintiffs in error in this court.

127 F.—51

SPEER, District Judge (dissenting). I·am unable to concur in the conclusion of the majority of the court that the finding of the District Court should be reversed and set aside, and particularly in the view that the indictment is fatally defective. Were the premise of the majority conceded, their conclusions would be as correct as they are clearly put. The defendants were indicted for conspiracy, as follows:

That they "did knowingly, unlawfully and feloniously combine, conspire and confederate together and with each other to commit an offense against the United States, to wit, to obstruct and retard the passage of the mails of the .United States, and the cars and vehicles carrying and engaged in carrying said .mails."

The majority of the court hold that in this language there is no charge of conspiracy to commit the particular crime against the United States for which it is. alleged the conspiracy was formed. The language of the statute defining this crime is as follows:

"Any person who shall knowingly and willfully obstruct or retard the passage of the mail, or any carriage, horse, driver, or carrier carrying the same, shall, for every such offense, be punishable by a fine'.of not more than one hundred dollars." Rev. St. § 3995 [U. S. Comp. St. 1901, p. 2716].

My learned Brothers hold that the omission of the words "knowingly and willfully" from the charge of the crime for which the conspiracy was formed is fatal to the indictment, for the .reason that these words are contained in the statute, and are essential to the crime. They are in the statute, it is true, and sufficient allegation and proof that the accused did knowingly and willfully commit the offense is, of course, indispensable. I am, however, convinced that the charge in the indictment that the accused "did· knowingly, unlawfully, and feloniously combine, conspire, and confederate to obstruct and retard the passage of the mails" is in all respects equivalent to the charge that they did thus unlawfully combine and conspire to "knowingly, feloniously and willfully" obstruct the passage of the mails. If men are charged with unlawfully, knowingly, and feloniously conspiring to· do· an act which the statute is aimed to prevent, they necessarily, in my judgment, are charged with conspiring to do the act knowingly, willfully, and feloniously. Of course, if there was no conspiracy, it would be necessary to use in its appropriate place all the language of the statute, and in some cases even to enlarge that by setting out the particular facts; but where the conspiracy is charged to have been feloniously, unlawfully, and knowingly done, and where the act thus conspired to be done is that which Congress has denounced, on an indictment thus explicit I cannot think that the judgment ought to be arrested, and the proceedings quashed, after a full trial and conviction by a jury. In the case of Ching v. United States, 118 Fed. 538, 55 C. C· A. 304, decided in the Fourth Circuit, in a case of this general character, Judge Goff, for the court, remarked:

"As to the sufficiency of the indictment, it must be first noted that the gist of the offense charged is that of conspiracy, which we think is properly pleaded. In such cases the offense which is intended to be committed as the result of the conspiracy need not be described as fully as would be required in an indictment in which such matter was charged as a substantive crime."

Since, for these reasons, I conclude that the charge of conspiracy is sufficient, we are then at liberty to consider the charges of the overt act. They are that 11 of the parties who were charged with the conspiracy did, with intent to effect the objects of the conspiracy, obstruct and retard the passage and delivery of the mail of the United States from the main post office of the United States in the city of New Orleans to the branch post office of the United States, corner Dryades and Euterpe streets (and other branch post offices), by obstructing, impeding, and interfering with and stopping, at the time and place aforesaid, a certain street railway car, No. 192, which car was then and there on its way for the purpose of receiving the mail, and carrying and transporting and delivering the same, as the said 11 defendants then and there well knew, and which said car, engaged in the service of carrying the mails of the United States as aforesaid, bore a sign, in large and conspicuous letters, "U. S. Mail"; the aforesaid persons then and there and thereby intending to obstruct and retard the passage of the said mails. Surely this is a sufficient charge of the overt act. On this indictment, after hearing the evidence, a verdict of guilty was rendered. We are, I think, obliged to presume that, as to the facts, the verdict was right. This being a writ of error, none of the evidence submitted to the jury was brought up in the record before this court, except the testimony of one Kursheedt. That relates wholly to the contract for carrying the mails, between the post-office department and the New Orleans Railways Company. On account of this condition of the record, I have been precluded from considering the merits of the case, and my attention has been, of course, confined to the sufficiency of the indictment. While perhaps unnecessarily meager, and while it would have been safer to have followed time-honored precedents for more copious averments, this indictment is, to my mind, sufficient. It certainly puts the accused on fair and ample notice of the offense with which they are charged. A conviction or acquittal upon it would as surely bar a subsequent trial. The defendants, therefore, are not, in my judgment, prejudiced. What more is needed to secure the constitutional rights of the accused, and the ends of justice? The trend of modern jurisprudence and of modern legislation is unfavorable to such a rigid judicial construction of indictments as will result in the acquittal and discharge of persons indicted, who, after a full hearing on the merits, have been convicted of crime. This conclusion is believed to coincide with the policy of the law as announced by the act of Congress on this most important subject. Section 1025, Rev. St. [U. S. Comp. St. 1901, p. 720], provides:

"No indictment found and presented by a grand jury in any district, circuit or other court of the United States, shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant."