**WILKERSON v. UNITED STATES.**

**No. 4224.**

Circuit Court of Appeals, Seventh Circuit.

June 24, 1930.

Rehearing Denied Aug. 18, 1930.

which provides that "if two or more persons conspire \* \* \* to commit any offense against the United States, \* \* \* and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined \* \* \*, or imprisoned, \* \* \* or both." The offense which is charged to be the object of the conspiracy is the violation of the National Motor Vehicle Theft Act, section 408, title 18, USCA, which provides that whoever shall transport or cause to be transported in interstate commerce a motor vehicle, knowing the same to have been stolen, shall be punished, etc. It further provides that "whoever shall receive, conceal, store, barter, sell, or dispose of any motor vehicle, moving as, or which is a part of, or which constitutes interstate \* \* \* commerce, knowing the same to have been stolen, shall be punished," etc.

The charge in the indictment most consistent with the government's evidence is that appellant conspired with others to receive an automobile, knowing the same to have been stolen, which automobile at the time was a part of interstate commerce.

The evidence shows beyond a reasonable doubt that the defendants below, other than appellant, had entered into the conspiracy charged, and in furtherance thereof were, and had been, stealing automobiles in other states and transporting them into Indiana and other states, where they received, concealed, stored, bartered, sold, or disposed of them. It will be observed that a part of the conspiracy was to sell and dispose of the automobiles to others, and to have others receive them. In other words, the conspiracy operated until the automobiles were finally disposed of and lodged in the possession of some person who was not, at any stage, a party to the conspiracy.

If, therefore, the property stolen and transported pursuant to the conspiracy ever became, in furtherance of the conspiracy, a part of interstate commerce, it remained so until it left the confines of the conspiracy. The evidence in this case shows conclusively and beyond reasonable doubt that the automobile in this case was stolen in Cleveland, Ohio, and transported into Indiana by the defendants other than appellant pursuant to, and for the purposes set forth in, the indictment. That the party or parties from whom appellant purchased the automobile was a party, or were parties, to the conspiracy there can be no doubt. Therefore at the time appellant purchased the auto it was still in

ALSCHULER, C. J., dissenting.

Clarence W. Nichols, of Indianapolis, Ind., for appellant.

Albert Ward, of Indianapolis, Ind., for the United States.

Before ALSCHULER, PAGE, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

The appellant was convicted and sentenced under section 88, title 18, USCA,

the channel of the conspiracy, and essentially a part of interstate commerce. If appellant, at the time he purchased the auto, knew it was stolen property, and planned and conspired to receive it by purchase or barter, he comes squarely within the provision of the statute, regardless of whether he knew at the time it was interstate commerce. Kasle v. United States (C. C. A.) 233 F. 878; Rosen v. United States (C. C. A.) 271 F. 651.

Appellant calls our attention to the case of Salla v. United States (C. C. A.) 104 F. 544. In that case the indictment charged defendants with conspiring to unlawfully, willfully, maliciously, and knowingly delay and obstruct a railway car and train, which car and train were then and there carrying United States mail. The court held the indictment bad because it did not allege that defendants knew the train was carrying mail. The statute under which the indictment was brought requires that defendants should have this knowledge. There is no crime, under that statute, in obstructing and delaying a train, or in conspiring to do so, unless it is carrying mail. USCA, title 18, c. 8, § 324.

The statute defining the substantive offense upon which the alleged conspiracy in the instant case is based does not require that defendant should know that the stolen property is a part of interstate commerce. The two statutes are directly opposite in this particular.

We are unable to reconcile the case of Linde v. United States (C. C. A.) 13 F.(2d) 59 (South Dakota), with either the statute above quoted or the cases of Katz v. United States (C. C. A.) 281 F. 129 (Ohio), Rosen v. United States (C. C. A.) 271 F. 651 (N. Y.), and Kasle v. United States (C. C. A.) 233 F. 878 (Ohio). Under the statute and these last-named cases, if appellant had been charged with having received a stolen automobile which was moving in interstate commerce, *knowing the same to have been stolen*, it would not have been necessary to allege or prove that he knew it was a part of interstate commerce. This state of facts clearly would have constituted an offense against the United States.

The conspiracy statute under which this indictment is drawn provides that if two or more persons conspire to commit *any offense* against the United States and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to the conspiracy shall be fined or imprisoned, etc. How, then, can it be said that it is necessary, under the conspiracy statute, to prove knowl-

edge of the appellant as to the interstate character of the property, when it is not necessary to do so in order to warrant a conviction under the statute which defines the substantive crime? The fact that the indictment charges such knowledge on the part of appellant does not strengthen the indictment, nor would its absence invalidate it.

■ Neither can the instructions of the court diminish or increase the effect of the statute. If the court instructed more liberally than appellant was entitled to, certainly appellant cannot complain.

Conceding, without admitting, that it was necessary to prove that appellant knew the car was a part of interstate commerce, we think there was sufficient evidence supporting this fact to warrant the court in sending the case to the jury; and, having done so, its determination is final.

The jury found that appellant knew he was buying a stolen car. He said he bought it from a stranger who gave his name as Earle Wilson, and appellant knew he was a bootlegger. The evidence shows that Wilson had the certificate of title in his own name and possession, and it was issued by the state of New York, and he had gotten it by way of assignment of another New York certificate. It is true that these certificates were forgeries, and the car was actually owned and stolen in Ohio; but this fact can avail appellant nothing. He knew that it was a stolen car, and that it was not an Indiana car. These facts are quite sufficient to support the verdict upon the question of appellant's knowledge that the car was in interstate commerce.

■ The evidence conclusively shows that appellant planned and conspired to receive the automobile. He talked with the thief in the Claypool Hotel, inspected it, rode in it around several blocks, telephoned to his secretary and to two friends relative to getting the purchase price, and went to Traugott's store and got part of the money. The transfer of the car and title was completed and he received it. It avails appellant nothing to say that he was guilty of nothing more than receiving a stolen automobile because the transaction was completed. In such case there may be a conviction of both the conspiracy and also the crime which is the object of the conspiracy. Chew v. United States (C. C. A.) 9 F.(2d) 348. The liability for conspiracy is not taken away by its success. Heike v. United States, 227 U. S. 131, 33 S. Ct. 226; 57 L. Ed. 450.

██ The remaining fact to be proved by the government to warrant conviction is that appellant, at the time he purchased the auto, knew that it was stolen property. Possession of the fruits of crime recently after its commission justifies the inference that the possession is guilty possession, and, though only prima facie evidence of guilt, may be of controlling weight unless explained by the circumstances or accounted for in some way consistent with innocence. This presumption applies as well to a person charged with unlawfully receiving stolen goods as to one charged with its original taking. If it raises a presumption of guilt as to the more serious crime, much more should it be evidence of the guilt implied in the lesser offense. It is a question for the jury whether the inference of appellant's guilty reception of the automobile, arising from his possession thereof within a short time after the theft, was overcome by the explanation. Rosen v. United States (C. C. A.) 271 F. 651; Drew v. United States (C. C. A.) 27 F.(2d) 715; Wilson v. United States, 162 U. S. 613, 16 S. Ct. 895, 40 L. Ed. 1090. Appellant acquired possession of the auto within 16 days after it had been stolen, and while presumption of guilt, flowing from possession of recently stolen property, grows weaker as the time of the possession recedes from the time of the theft, yet it is for the jury to determine when the inference of guilt is overthrown by the length of possession.

The explanation of appellant's possession is contained in a sworn statement made by him voluntarily before an agent of the Department of Justice on October 6, 1928, in which he says he paid for the automobile $2,800 in cash and delivered to the seller three shares of Knox-Harrison bank stock of the par value of $100 a share; that he was compelled to cash a check for $1,500; that he went to the Lincoln Hotel and called Edward Traugott on the phone, who agreed to indorse his check. Appellant executed the check for $1,500 at the Lincoln Hotel and went to Traugott's store and handed the check to Traugott in front of his store. Appellant then sat down and read a Racing Form, and in a short time Traugott brought him the money, a great deal of it in twenty dollar bills. Appellant thereupon returned to the Claypool Hotel and delivered the purchase price to Earle Wilson.

At the suggestion of Wilson, appellant signed an application for certificate of title, but he never acknowledged the signature before any one. Appellant paid Wilson $12 for an Indiana license which Wilson promised to secure from the secretary of state to deliver to appellant, which was done the same day. The records from the secretary of state of Indiana, with reference to this car, show that it was sold to Earle Wilson by Westcott & Burlingame, Inc., of New York City, on August 11, 1927, and that on the same day a New York certificate of registration was issued to him. These two instruments were forgeries, and there is no evidence that appellant ever saw them. The original owner of this car, John B. Wilberding, testified that his initials were on the door of the car when it was stolen on December 25, 1927; that later when he saw the car at Columbus (which was after October 6, 1928) the initials on the door had been obliterated; "that at first you could not see them, but when you stood at the side you could see them imbedded there." There is no evidence as to when these initials were obliterated, whether it was before appellant purchased the car or afterwards.

The evidence further shows that the shares of stock of the Knox-Harrison Bank have never been assigned on the books of the bank, and that the bank has been insolvent and in the hands of a receiver since May 10, 1928.

The evidence does not show where Traugott got the money which appellant says was paid to him by Traugott. The check was deposited the same day it was given to the account of Traugott in Fletcher Savings & Trust Company, at 474 West Washington street, Indianapolis. Traugott's store was on Washington street across from the State House. But he did not get the money at the bank, because the account shows no check of that date. Appellant does not say that Traugott got the money at his store. Furthermore, Traugott had been requested only to indorse the check, and yet he returned from some unknown place with the money, a large part of which was in twenty dollar bills. Again, appellant was dealing with two strangers in the purchase of the auto and the only thing he knew about them was that they were self-confessed law violators, for they had told him this; yet he made no inquiry of the title, and gave $12 to Earle Wilson, the man least known to him, to secure for him a registration certificate at the secretary of state's office.

These facts are of course only circumstances, but they are of such an unusual character, considering the amount involved, that they immediately challenge the veracity of the parties concerned. It must be remembered that Traugott was, according to the evidence, an active participant in the alleged

conspiracy, and that he was an intimate friend of appellant, at least sufficiently intimate to advance $1,500 on his check. The theory of the government is that the only consideration paid for the car by appellant was. the check given to Traugott, and that Traugott never gave appellant $1,500 in cash.

The facts and incidents enumerated were properly submitted to the jury for them to determine whether the explanation of possession was sufficient to overcome the inference of guilty possession. The jury had a right to. determine whether appellant's explanation, or any part thereof, was true or false. They have determined this fact adversely to appellant, and we cannot disturb the finding.

Judgment affirmed.

ALSCHULER, Circuit Judge (dissenting).

It seems to me the opinion loses sight of the charge against this man, which is that of conspiracy to violate the so-called Dyer Act (18 USCA § 408).

If it be assumed that appellant knew the car he bought was stolen, then what he did was to buy for himself a stolen car; but there is no evidence to indicate he knew that, as a stolen car, it or any other car had been or was intended to be transported in interstate commerce.

It is true that one may join a conspiracy after it has been formed, and need not know of all its ramifications to make him a party to it. But this does not mean that where one participates in a particular transaction he thereby becomes party to a widespread and general conspiracy of which there is no evidence he had any knowledge whatever. He must have some knowledge of a conspiracy before he is criminally chargeable with entering it.

If the negotiations for purchase of the car can by any stretch be expanded into a criminal conspiracy, what sort of conspiracy was it? Clearly only a conspiracy to dispose of a stolen car, but in no sense a conspiracy on the part of appellant to steal cars and transport them in interstate commerce.

Can it be properly said that, by a reprehensible undertaking to procure at low price for his own use a stolen car, one thereby becomes a party to a widespread conspiracy to steal cars in various states, transport them interstate, and dispose of or to receive or conceal them—a conspiracy of which it does not appear he had ever even heard? I believe this larger purpose is so far beyond the "con-

fines" of the limited conspiracy into which he may be said to have entered (if indeed this is in any event a conspiracy) as to forbid his conviction as a party to the larger conspiracy, whereof he had not the slightest knowledge.

The trial surely was not of two conspiracies, and was manifestly. of the larger one only, in which evidence was received of the theft and interstate transportation of fourteen other cars than the one with which Wilkerson · was concerned—transactions with which Wilkerson had no more connection, near or remote, than had any member of this court. And yet he was tried with them upon the charge of the larger conspiracy, and went down with the rest of the company with which this prosecution aligned him.

That Earle Wilson (if not a myth) and Traugott may have been members of the general conspiracy does not of itself indicate that Wilkerson was also a member. The evidence of his dealings with them is entirely consistent with his want of knowledge that cars were to be stolen and transported interstate, or as such to be received, concealed, or stored.

The statement in the opinion that there was evidence tending to show that Wilkerson knew the car had been transported interstate, if having support in the evidence falls short of meeting the situation. There is still the unbridged hiatus of his want of knowledge that, *as a stolen car*, it or other such cars had been or were designed to be transported interstate. So far as anything to the contrary appears, Wilkerson, if knowing it to have been stolen, may have assumed that it came rightfully into Indiana, and was there stolen, in which case there was, of course, no federal liability.

The crime of conspiracy is not established by proof of the consummated criminal act, to commit which may have been its object. In United States v. Heitler (D. C.) 274 F. 401, 405, it was stated: "To establish a conspiracy to violate a certain criminal statute, the evidence must convince a jury that defendants did something other than participate in the substantive offense which is the object of the conspiracy. To illustrate, A., B., and C. may each have purchased this whisky from D., E., and F. and may have carried it from the freight car in which it arrived, yet not have been in the conspiracy to which D., E., and F. were parties."

In Salla v. United States, 104 F. 544, 547 (9 C. C. A.), it was said: "The defendants in this case are not charged with the overt

act of obstructing the passage of the mails or a carrier of the mails, but with a conspiracy. It is the confederation and conspiracy to commit an offense against the United States that they are called upon to answer for. As charged in the indictment, the conspiracy is declared to have had for its purpose to knowingly hinder and delay the movement and passage of a certain railway car and train, which car it is subsequently alleged carried the mails of the United States. It is no offense against the United States to hinder and delay the passage of a railway car, and consequently it is no offense to conspire or confederate for that purpose. Such an offense must be dealt with under the laws of the state. The conspiracy, as charged in the indictment, lacks an essential ingredient to an offense against the United States, to wit, that the defendants knew that the mails of the United States were carried upon the train which they conspired to obstruct."

In Linde v. United States, 13 F.(2d) 59, 61 (8 C. C. A.), the court said: "One of the main assignments of error is that the evidence was insufficient to connect these three defendants with the conspiracy, and with knowledge that the stolen cars involved were, or were to be, transported in interstate commerce. With respect to the defendants Linde and Brown we think the point is well taken. A careful consideration of the entire record convinces us that it fails to disclose any further connection with the scheme, although the existence of such a scheme and plan is abundantly established, than the receipt of a car by each of these defendants for personal use, and without proof of knowledge of the interstate character of the transaction. There are a number of circumstances which would lead to the suspicion that both Linde and Brown knew that the cars sold or traded to them were stolen cars, but it does not appear that they knew whence they came, or were to come, nor that they were parties to any general plan or conspiracy having as its object the introduction of such cars from without the state for purposes of disposition and sale. That they may have had guilty knowledge and participation rests upon suspicion only, arising from their acquaintance and association with some or all of the other conspirators; but to establish a conspiracy to violate a criminal statute the evidence must convince that the defendants did something other than participate in the substantive offense which is the object of the conspiracy. There must, in addition thereto, be proof of the unlawful agreement, and in this case, in our judgment, that proof is insufficient. United States v. Heitler et al. (D. C.) 274 F. 401; Stubbs v. United States (C. C. A. Ninth Circuit) 249 F. 571, 161 C. C. A. 497; Bell v. United States (C. C. A. Eighth Circuit) 2 F. (2d) 543."

Dickerson v. United States, 18 F.(2d) 887 (8 C. C. A.), is to the same effect, citing the Heitler, Linde, and other cases.

The facts in the Linde Case are so strikingly like those here present that if Wilkerson were there substituted for Linde and Brown, that decision would, in my judgment, correctly dispose of this appeal.

The court below evidently had the same view of the law of such a case in charging the jury that "you must further find, beyond a reasonable doubt, from the evidence, that the defendant, Louis A. Wilkerson, knew that the car he purchased was stolen and transported, or caused to have been transported in interstate commerce, and that he knowingly received, or concealed the car moving as, or which was a part of, or which constituted interstate commerce, knowing the same to have been stolen, and knowing the same to have been transported, or caused to have been transported in interstate commerce. Unless you find from the evidence, beyond a reasonable doubt, that Louis A. Wilkerson had such knowledge, you must return a verdict of not guilty as to him."

In this view of the law it is not readily perceivable how the court could have let the case against Wilkerson go to the jury, or sustain the jury's verdict.

But a conspiracy being essentially a crime of intent, proof that Wilkerson knew the car was stolen, or was transported in interstate commerce, or that he received it while it was moving in or as a part of interstate commerce, knowing it to have been stolen, do not of themselves prove a conspiracy to do these things. The crime of conspiracy to violate the Dyer Act may be completed without the theft of a single car, or any movement in interstate commerce, or receiving or concealing the car while so moving. The gist of the offense is the unlawful combination having these things for its object, and I cannot see that Wilkerson was even remotely a party to such a project.

To have charged the conspiracy as one for stealing or receiving stolen cars knowing them to have been stolen, would not have stated a conspiracy to violate the Dyer Act, and would not, to my mind, have conferred federal jurisdiction.

The pleader who drew the indictment evidently recognized the necessity of charging

as one of the essential elements of the conspiracy the knowledge and intent on the part of the conspirators that the stolen cars would move in interstate commerce, in stating in the indictment that the conspirators "would then and there * * * knowingly, willfully and feloniously transport and cause to be transported in interstate commerce certain stolen motor vehicles, to wit, automobiles, knowing the same to have been stolen, and further that they * * * would then and there and thereafter * * * unlawfully, knowingly, willfully and feloniously receive, conceal, store, barter, sell and dispose of a large number of stolen motor vehicles, * * * *moving as and which should be a part of, and would constitute interstate commerce, they, the said named and unknown persons, then and there to well know that said automobiles were so stolen and were moving as, and were a part of, and constituted interstate commerce."*

Practically all of the facts discussed in the opinion bear on the question as to whether Wilkerson knew the car was a stolen car, and for the purposes hereof this is assumed; but they tend neither to prove that Wilkerson had knowledge that the car, after its theft, would be or had been transported interstate, nor that he was a member of any conspiracy which had for its object the transgression of the Dyer Act. Upon these essential propositions neither these facts, nor the discussion predicated on them, in my judgment have any relevancy.

Except as the majority opinion by necessary implication so holds, I believe it has not yet been declared to be the law that every offense of receiving an automobile contrary to the provisions of the Dyer Act, ipso facto constitutes at the same time also the offense of conspiracy under title 18, § 88, U. S. Code (18 USCA § 88), to violate it.

Instances may be readily imagined where transactions culminating in the receiving of a known stolen automobile received while in interstate commerce may implicate the receiver in the two offenses; but where, as here, the receiver, prior to buying and receiving the car, had no knowledge, directly or indirectly, of any plan or purpose to steal the car and transport it interstate, to my mind no basis for the charge of conspiracy appears.

To my mind (a) there is no evidence that Wilkerson was guilty of any conspiracy; (b) if guilty of a conspiracy, it was not the conspiracy on which he, with his codefendants, was tried and convicted; (c) the judgment should be reversed.