### EDWARDS v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. July 28, 1925.)

No. 6702.

1. **Indictment and information ⬅130—Counts in prosecution for violation of National Motor Vehicle Theft Act held properly joined in one indictment.**

In prosecution for violation of National Motor Vehicle Theft Act (Comp. St. Ann. Supp. 1923, §§ 10418b–10418f), counts charging defendant with receiving and storing the automobile. and with bartering and selling it, knowing same to have been stolen and transported in interstate commerce, and with transporting in interstate commerce the automobile, knowing it to have been stolen, *held* to charge the same class of crimes or offenses, as contemplated in Rev. St. § 1024 (Comp. St. § 1690), and hence properly joined in one indictment.

2. **Criminal law ⬅823(10)—Charge as to effect of possession of recently stolen property held not erroneous, in view of additional charge.**

In prosecution for violation of National Motor Vehicle Theft Act (Comp. St. Ann. Supp. 1923, §§ 10418b–10418f), charge that unexplained possession of recently stolen property was prima facie evidence of guilty possession *held* not erroneous, where court, in addition, charged that from all facts and circumstances jury must find that defendant knew that property was stolen.

3. **Criminal law ⬅865(1)—Court's act in giving supplemental charge, after jury had reported inability to agree, held reversible error.**

Where jury had deliberated after submission of the case for 24 hours, and, being brought into court, reported their inability to agree, and that they had made no substantial progress, and court thereupon asked foreman whether point in dispute was a matter of law, and foreman replied, "I don't think it is," act of court in proceeding as though it were a matter of law which caused the disagreement, and again summing up and charging jury on the controlling points in the case in language that was not free from argument, and concluding with language which was at least in some degree calculated to coerce a verdict, constituted reversible error.

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Seth Edwards was convicted for a violation of the National Motor Vehicle Theft Act, and he brings error. Reversed and remanded.

E. L. Burton, of Parsons, Kan. (A. H. Skidmore, of Columbus, Kan., and C. A. McNeill, of Carlyle, Ill., on the brief), for plaintiff in error.

John N. Free, Asst. U. S. Atty., of Chetopa, Kan., and Alton H. Skinner, Asst. U. S. Atty., of Topeka, Kan. (Al F. Williams, U. S. Atty., of Topeka, Kan., on the brief), for the United States.

Before STONE and LEWIS, Circuit Judges, and SCOTT, District Judge.

SCOTT, District Judge. Two indictments were returned against plaintiff in error on the 7th day of May, 1923, by the grand jury impaneled for the district of Kansas, Third division, for the violation of what is known as the National Motor Vehicle Theft Act, approved October 29, 1919 (Comp. St. Ann. Supp. 1923, §§ 10418b–10418f). In case No. 562 it is charged in substance that on or about the 12th day of February, 1923, at Columbus, Cherokee county, Kan., the said Seth Edwards did knowingly and feloniously transport and cause to be transported in interstate commerce from Blackwell, in the state of Oklahoma, to Columbus, in the state of Kansas, one certain motor vehicle, to wit, a Ford coupé of a certain number, the property of one Carl Kohler, of Blackwell, Okl., which had been stolen from the said Kohler at Blackwell, on or about the 8th day of February, 1923; the said Edwards well knowing at the time he so transported the car in interstate commerce that said car had been stolen.

In case No. 563 it was charged in substance in count 1 that on or about the 26th day of October, 1922, at Columbus, Kan., the said Seth Edwards did unlawfully, knowingly, willfully, and feloniously receive and store one certain motor vehicle, to wit, a Ford coupé, of a certain model and number, the property of J. M. Harmon, of Adrian, Mo., and which had been stolen from the said Harmon at Butler, Mo., on or about the 13th day of October, 1922, and that at the time of so receiving and storing said car the said Seth Edwards well knew the same had been stolen and transported as afore-

said. The second count in case No. 563 charged in substance that on or about the 2d day of November, 1922, at Columbus, Kan., the said Seth Edwards did unlawfully, knowingly, willfully, and feloniously barter and sell the said vehicle described in the first count, well knowing the same to have been stolen and transported in interstate commerce.

These two cases in three counts were consolidated for the purpose of trial, and plaintiff in error was tried thereon. In case No. 563 the jury returned a verdict of not guilty on both counts of the indictment, and in case No. 562 the jury returned a verdict of guilty, and judgment was entered thereon, and the said Seth Edwards, as plaintiff in error, brings the case here upon writ of error.

The testimony of the government tends to show that the Ford coupé car, described in the indictment and numbered 6241438, was on the 7th of February, 1923, the property of one Carl P. Kohler, of Blackwell, Okl., and was then situated in a garage of an acquaintance of Kohler's in Blackwell, Okl.; that on the night of that day it was stolen; that some weeks later it was found in the possession of one Hiller a few miles north of Columbus, Kan.; and that Hiller purchased said car from plaintiff in error Edwards on the morning of February 22, 1923. There was testimony of one witness tending to show that Edwards had been in possession of the car as early as February 15th. However, this testimony we regard as of little weight, as the witness did not claim to have known the car, and forms his opinion only from the fact that he had seen a Ford coupé parked with the defendant's cars, the defendant being a dealer in new and second-hand cars at Columbus; that he had observed that there was a flat tire on one wheel, and that one Ward was carrying a diamond tread tire toward the car, and at a later period saw a diamond tread tire on the car in question. There was no direct evidence that the defendant had ever been at Blackwell, Okl., or had been transported the car in interstate commerce. The verdict in that respect rests upon an inference drawn by the jury from defendant's possession of the car later at Columbus, Kan. The defendant offered the testimony of five witnesses tending to show that he purchased the car from one George Leota at the town of Treece, Kan., about the 19th of February, 1923, and a bill of sale purporting to be signed by said Leota and witnessed by two witnesses was introduced in evidence.

At the close of the testimony the court charged the jury, and the jury retired to enter upon their deliberations at 12:15 p. m. o'clock November 14th, and at 12:05 p. m. o'clock November 15th the jury returned into court and the following proceedings and colloquy took place:

"The Court: Mr. Foreman, have you agreed upon verdicts in the cases submitted to you?

"Mr. Foreman: No, sir; we are unable to agree, your honor.

"By the Court: What is the point of dispute—some matter of law?

"Mr. Foreman: No, sir; I don't think it is.

"The Court: If it is a matter of law, it is the duty of the court to make it so very clear to the mind of every juror that you cannot misunderstand it. How are you getting along with your work? Making progress since you went out?

"Mr. Foreman: No, sir; none to speak of.

"The Court: Well, you have made some, then?

"Mr. Foreman: Very little. We are about where we started.

"The Court: We are very much in need of jurors in this case in which we are now impaneling a jury. Is there any matter in which the court can be of assistance to you? The parties have brought all their evidence here. The matter has been tried through. Of course some jury must determine, in the end, and I look to you men, and I am very well satisfied that you are not willing to concede another 12 men can do any better at it than you can. Is there any proposition on which any juror—I mean a proposition of law—would like any advice?

"As I said to you when I charged you, if you find a dispute in evidence in the cases that you have heard, boiled down, comes down to simply a single question. I charged you that you would not have, and I know you have not, as intelligent men, had any trouble in determining that these cars involved in the cases that you are trying were stolen, stolen by some one. The fact that they appeared in the possession of the defendant, no dispute over that. As one of them was stolen, if you find they were stolen, in Blackwell, Okl., and one over in Bates county, Mo., they were transported in interstate commerce. So that leaves one

question. Did defendant, if he transported, or caused to have transported, the Blackwell, Okl., car—did he know it was a stolen car? That is, from all the facts in the case, must he have known it was a stolen car. If from all the facts he must have known it, he did know it. As to this other car from this man Harmon at Adrian, Mo., the defendant is not charged with transporting that car; but he is charged with having received it and stored it while moving in interstate commerce, knowing it to have been stolen. Now, along that line I charged you: The possession of goods recently stolen raises the presumption that it is a criminal possession, a wrongful possession, unless it is shown why; that is to say, suppose one of you gentlemen lose your car, it should be stolen from you, and the next morning it should be found in a garage over here in Nevada, Mo. You at once would jump at the conclusion—and that is the way the mind works with circumstances —that, that party having it over there in his possession, his possession was either wrongful of your car, or he should be able to explain just exactly how he got that car and how he came by it.

"Now, these cars, being in the possession of this defendant, and if you find they were, and I don't suppose you will have any trouble about that; of course, all the while you are the judges of the facts; it is not the business of the court to find the facts; the court is the judge of the law. Now, the real question you gentlemen have to determine, and will determine, in arriving at this question—did the explanation made explain this possession? Now, that some parties down there testified, as I have charged you, all to one accord, almost in the same language, about how the cars came in there; was there a Ford coupé car, under their evidence; was it this Ford Coupé that was lost over here at this town of Blackwell? Now, gentlemen, some jury will settle this controversy, of course, have to. While in matters of grave difficulty it sometimes happens that men cannot get together, yet I have generally found that where juries disagree, or men disagree in this world, it is because they do not understand each other, and do not understand precisely what it is that is to be determined. Now, you understand precisely what it is that your verdicts in these cases are to decide, and it narrows down, perhaps, to that one question. I wish you would go out and reason with each other, and see whether you can arrive at a verdict in these cases, or any one of

them. If you gentlemen—suppose the court had been trying jury cases for a week, until you have become accustomed to working together, and in this case you would not have found any trouble in agreeing at all. A court and jury is just like a team that is accustomed to working and pulling together; can do a great deal of work without any fuss and feathers. Now, juries and men work together in much the same way. If you had a less complicated question submitted to you, until you became accustomed to working together, you would have had no trouble at all. Now, if you go out, and lay aside the idea you know more about it than the other fellow, and work together, I think you will pull a verdict out of these cases. Don't you think so, Mr Foreman?

"Mr. Foreman: I couldn't say.

"The Court: You are willing to try, of course?

"Mr. Foreman: Yes.

"The Court: Do you think it can be done?

"Mr. Foreman: I doubt it very much, Judge.

"The Court: But you are willing to try?

"Mr. Foreman: Willing to try; yes.

"Judge Dillard: Now, if your honor please, I am not at all interested in these cases, but Mr. Burton asked me to appear for him when the jury came in. On behalf of the defendant, the defendant excepts to each and every of the instructions given by the court, upon being called into court to report whether they had agreed upon a verdict, and the defendant further excepts to the instructions of the court, in which he tells the jury that some other jury will have to determine these cases, and to the instruction—

"The Court: Unless this jury does determine it.

"Judge Dillard: You didn't say that; I am excepting to what you did say.

"The Court: I say now, unless this jury does determine it.

"Judge Dillard: And the defendant excepts to the instruction that the jurors must not be impressed with the idea that they know more than anybody else, and to each and every of the instructions given by the court at this time.

"The Court: Very well; you will go out and see if you can arrive at a verdict."

Thereupon the jury retired, and within a short space of time the same afternoon returned into court with three verdicts. In case No. 563 the verdicts were not guilty

upon both counts, and in case No. 562 there was a verdict of guilty. Motion for new trial having been filed, submitted, and overruled, the defendant was sentenced to serve a term of one year and one day in the federal penitentiary at Leavenworth, Kan., to which judgment the defendant duly excepted.

On this appeal the defendant assigns five errors which were argued on the briefs. The assignment is as follows:

"(1) The District Court erred in consolidating and trying this case with case No. 563: (a) Because the indictment charged a separate and distinct offense, and a transaction in no way connected with this case. (b) Because the evidence offered in this cause did not prove or tend to prove any fact alleged in case No. 563. (d) Because the evidence in case No. 563 did not prove or tend to prove any fact in this case. (e) Because trying the two cases together would tend to prejudice the jury in this case.

"(2) The District Court erred in instructing the jury that 'stolen property found in the possession of any one a short time after its larceny, or having been stolen, with that possession unexplained, is prima facie evidence of the fact that it is a guilty possession,' and in substance instructing the jury that the real question did the evidence of the defendant's witness explain the possession of the defendant: (a) Because at common law recent possession of stolen property was not prima facie evidence of guilty possession. (b) Because the statute under which the defendant was prosecuted by its terms make no such rule of evidence.

"(3) That the court erred in instructing the jury, 'The question for you gentlemen to determine is whether this defendant did or should have known, from all this evidence, and all the circumstances as to whether these cars were honest cars, or whether they had been stolen:' (a) Because it changed the rule of reasonable doubt. (b) Because it left the jury to determine whether the defendant was negligent in purchasing said car.

"(4) That the court erred in instructing the jury, 'Of course, some jury must determine, in the end, and I look to you men, and I am very well satisfied that you are not willing to concede another 12 men can do any better at it than you can:' (a) Because it tended to cause the individual juror to sacrifice his individual judgment. (b) Because it tended to appeal to the collective pride of the jury.

"(5) That the District Court erred in instructing the jury, 'Now, if you go out and lay aside the idea you know more about it than the other fellow, and work together, I think you will pull a verdict out of these cases:' (a) For the reason it is a request for the individual jurors to sacrifice their individual judgment in favor of the whole."

[1] In our judgment, the first assignment of error is entirely without merit. Section 1024 of the Revised Statutes (Comp. St. § 1690) provides that, when "there are several charges against any person for the same act or transaction, or for two or more acts or transactions connected together, or for two or more acts or transactions of the same class of crimes or offenses, which may be properly joined, instead of having several indictments the whole may be joined in one indictment in separate counts. * * *" Now, in one count in case No. 563, the defendant was charged with receiving and storing the automobile, knowing the same to have been stolen and transported in interstate commerce. In the second count of that case the defendant was charged with bartering and selling the automobile, knowing that the same had been stolen and transported in interstate commerce; and in the count in case No. 562, defendant was charged with transporting or causing to be transported in interstate commerce the automobile, knowing it to have been stolen.

Counsel for defendant, in framing this assignment of error and stating its grounds, seem not to have grasped fully the meaning of the language employed in section 1024, supra. Counsel state their grounds for the assignment as follows: "(a) Because the indictment (in case No. 563) charged a separate and distinct offense, and a transaction in no way connected with this case. (b) Because the evidence offered in this cause did not prove or tend to prove any fact alleged in case No. 563." "(d) Because the evidence in case No. 563 did not prove or tend to prove any fact in this case."

It would seem that counsel were under the impression that, before cases could be consolidated, they must be connected in some way by common facts and circumstances. Such is not the provision of the section referred to. The provision for consolidation is not only when "there are several charges against any person for the same act or transaction," but when there are "two or more acts or transactions of the same class of crimes or offenses." We

think there could be no doubt that the acts and transactions charged in each of these three counts in the consolidated cases are of the same class of crimes or offenses as contemplated by section 1024 of the Revised Statutes of the United States.

[2] Assignments of error 2 and 3 both challenge the correctness of the charge of the court as to the effect of possession of recently stolen property. We therefore consider these two assignments together. The trial court charged the jury that "stolen property found in the possession of any one a short time after its larceny, or having been stolen, with that possession unexplained, is prima facie evidence of the fact that is guilty possession." The court further said to the jury: "The question for you gentlemen to determine is whether this defendant did or should have known, from all this evidence and all the circumstances, as to whether these cars were honest cars, or whether they had been stolen." The court, following exception of the defendant's counsel to the language above quoted, added: "I say, the possession of the property recently stolen, personal property, unexplained, may justify a jury in determining or weighing that for the purpose of determining that the possession is a guilty possession." "By that, I mean this. Every one in this world is presumed to know what, from all the facts and circumstances, they should know about the matter. Of course, after all, you must find that from these facts and circumstances the defendant did know." We think that as finally supplemented the charge of the court on this question was not erroneous.

Assignments of error 4 and 5 are argued together on the briefs, and taken together, in connection with the entire portions of the charge to which they are directed, raise the contention that the charge of the trial court in the respect referred to tended to coerce a verdict from a reluctant jury, and to deprive the defendant of a fair trial.

[3] As heretofore stated, the jury had deliberated after the submission of the case for 24 hours, and, being brought into court, reported their inability to agree, and that they had made no substantial progress. The court thereupon asked the foreman whether the point in dispute was a matter of law, and the foreman replied: "I don't think it is." The trial court, however, proceeded as though it were a matter of law which was causing disagreement, and again summed up and charged the jury on the con-

trolling points in the case in language that was not free from argument, and concluded with language which we think at least in some degree calculated to coerce a verdict. It must be remembered that the facts were not complicated, and the dispute must necessarily have been drawn to a very fine point. The jury had deliberated for 24 hours, and reported substantially no progress; that is: "We are about where we started." Following the colloquy between the trial court and the foreman, and the supplemental instruction, the jury retired, and within a comparatively short time the same afternoon returned verdicts acquitting the defendant on both counts in case No. 563, and convicting the defendant on the count in case No. 562.

The language of the senior circuit judge of this Circuit in Stewart v. United States, 300 F. 769, 786, is enlightening in considering the principle which we conceive to be involved in the supplemental instruction of the trial court in this case. In that case the jury, having deliberated many hours, found itself in much the same plight as the jury in the instant case. Judge Sanborn there said:

"The jury in this case had deliberated many hours and had disagreed. There was at least one juror, perhaps more, that was convinced that the defendant was not guilty. The crucial questions in this case were questions of fact, that it was peculiarly the duty of the jury to consider and decide, among other things, the intention, the knowledge, the belief, the purpose, and good faith of the defendant Stewart. Much of the evidence on these questions was circumstantial; the testimony upon them was conflicting. The jury had disagreed. They received the supplemental charge from the court, retired, and in a short time returned with a verdict of guilty. As was said by the Supreme Court in Burton's Case: 'A slight thing may have turned the balance against the accused under the circumstances shown by the record' (196 U. S. 307, 25 S. Ct. 250 [49 L. Ed. 482]), the supplemental charge and especially the excerpt from the opinion in Allen's Case were more than a slight thing, and our conclusion is that they bore too hard upon the convictions of the minority of the jury, and that an impartial and fair administration of justice will be served by a new trial of this case."

In this case the jury, after 24 hours' deliberation upon a narrow issue, had disagreed. The foreman, when questioned expressed no hope of the probability of an

agreement, and yet a speedy agreement was arrived at, acquitting the defendant on certain counts and convicting him on another, where there appeared to be little if any difference in the degree of proof adduced. We think the trial court erred in giving the supplemental instruction in the language disclosed by the record, and that such error tended to deprive the defendant of a fair trial. The case should be and is reversed and remanded for a new trial. Reversed.