## McADAMS v. UNITED STATES.
### No. 9960.

Circuit Court of Appeals, Eighth Circuit.
Nov. 14, 1934.

**38**

G. W. Botts, of De Witt, Ark., and A. G. Meehan and John W. Moncrief, both of Stuttgart, Ark., for appellant.

Fred A. Isgrig, U. S. Atty., of Little Rock, Ark., and Gordon Frierson, Asst. U. S. Atty., of Jonesboro, Ark.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

SANBORN, Circuit Judge.

From a conviction upon an indictment containing eleven counts charging the defendant with having received and with having sold stolen automobiles moving in interstate commerce, knowing the same to have been stolen, this appeal is taken. The statute involved is the National Motor Vehicle Theft Act, section 408, title 18, U. S. C. (18 USCA § 408), which, among other things, provides:

"Whoever shall receive, conceal, store, barter, sell, or dispose of any motor vehicle, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be punished," etc.

The defendant was a dealer in secondhand cars at De Witt, Ark. In February, 1933, six stolen automobiles, which had been transported from other states into Arkansas, were located at De Witt. One of them was still in the defendant's possession. The others he had apparently acquired within a short time after they had been stolen, and each of them had been sold by him to some person living at or near De Witt. The motor numbers on the cars had been cleverly changed. There was no suggestion that the defendant himself had stolen the cars or that he had changed the numbers on them. Upon the trial the government relied, for conviction, upon the evidence of his acquisition of the fruits of recent crime and the circumstances surrounding such acquisition. The defendant denied that he had any knowledge that the cars were stolen cars, and contended that he had purchased them in the ordinary course of his business from persons claiming to own them, and had dealt with them openly and in good faith, and had sold them to his customers, many of whom he had known for years. The evidence indicated that he had dealt with these cars in the same manner that he dealt with other secondhand cars; that he had received bills of sale for most of them, but from persons he did not know and could not locate; that he sold them openly to persons living in his community; that, when the cars were taken from them to be restored to their owners, he made restitution and exhausted his financial resources in so doing. There was evidence that he bore a good reputation in the community where he had lived for many years.

The government offered no evidence to show who stole the cars, who transported them, when they arrived in Arkansas, or

through whose hands they passed before they reached the defendant, and it is impossible to say from the record whether they were driven directly to the defendant's place of business by those who transported them or whether they were delivered to some other person or persons who first altered the numbers of them and then arranged for their sale to the defendant, although, in view of the change in the motor numbers, the latter hypothesis would seem to be the more probable.

■ The defendant, at the close of all of the testimony, made no motion for a directed verdict upon the ground that there was no substantial evidence to sustain a conviction. Hence the question of the sufficiency of the evidence is not properly before us. Ayers v. United States (C. C. A. 8) 58 F.(2d) 607.

■ The defendant did, however, at the close of the case, request the court to give the following instruction:

"Among other things, the burden is on the government to show that the automobiles, at the time they were received, stored, possessed or sold by defendant, were then and there in interstate commerce and transportation."

This request the court refused to give, and it charged the jury as follows upon that point:

"The government has offered proof on each of the cars to show that the cars were stolen and that they were brought into this state from some other state. He (the defendant) doesn't make any denial of this. There is no testimony to dispute the fact that the cars were stolen and that they were transported into this state. He admits that he bought the cars, stored them and that he sold all but one. His defense is that he did not know they were stolen cars at the time he stored them, bought them and stored them and at the time he sold them."

The defendant took an exception to the refusal of the court to give the requested instruction, and has assigned such refusal as error.

Counsel for the government, in their brief, say that, since the automobiles were brought from cities in the states of Tennessee, Louisiana, and Oklahoma, in November and December, 1932, and January, 1933, and were found in the vicinity of De Witt, Arkansas, February 1, and February 2, 1933, and that at some time during that brief interval they had crossed the state lines and had been driven into Arkansas, where they were found and had been bought by the defendant, it must be assumed that they still possessed their interstate character at the time the defendant received and sold them; that to hold otherwise would be to place upon the government the burden of showing the whereabouts of the cars from the time they were stolen until they came into the possession of the appellant, and would have the effect of nullifying the act of Congress.

That, in a case such as this, the government has the burden of proving that the cars at the time they were received and sold by the defendant were still a part of interstate commerce, was held by this court in Davidson v. United States, 61 F.(2d) 250, 255, 256, in which we said:

"Receiving a stolen car that had lost its character as interstate commerce constitutes no crime against the laws of the United States. Wolf v. United States (C. C. A.) 36 F.(2d) 450. The government has totally failed to sustain this burden of proof, and there is no testimony or circumstances in the record that would support a finding that this car was in interstate commerce at the time it was received by these two defendants. In fact, without some testimony indicating that the destination of this car was Brummell and Davidson, it is entirely consistent with the evidence that the interstate character of this car ceased when it was stored in the garage by Gillette at 1812 Independence avenue, Kansas City. * * *

"It is essential to the offense that the property, at the time it is charged that the defendants received or stored it, was moving as, or was a part of, interstate commerce."

The Seventh Circuit, in the case of Wolf v. United States, 36 F.(2d) 450, 452, had previously reached the same conclusion. There the court said:

"In the instant case, there is not a scintilla of evidence to suggest that either defendant stole the car or that either defendant knew of the stolen car's existence until it was in Indianapolis. Neither could have participated in its theft nor its removal from Cleveland to Indianapolis."

In United States v. Di Carlo (C. C. A. 2) 64 F.(2d) 15, it was held that the defendant's possession of the stolen car after transit and in the state of destination was sufficient to create the inference that he received and stored the stolen car at the end of its interstate journey, but in that case it must be noted that the defendant was charged both with transporting and storing the car, and, as the

court points out, since the jury were at liberty to find that he transported it in interstate commerce, they might also find that he stored it immediately after he had transported it and while it was still a part of interstate commerce.

We think it is clear that the refusal of the court below to instruct the jury that the burden was upon the government to prove that the cars in question were in interstate commerce when received and sold by the defendant, was an error which entitles the defendant to a new trial.

In view of the fact that there must be a retrial of this case, it seems necessary to mention a few other matters.

■■■ The defendant complains of the instructions of the court below with regard to the probative effect of the possession of recently stolen property. In its charge the court said:

"The Court instructs you that the possession of recently stolen property is of itself prima facie evidence that the possessor knows of his guilty possession. However, if he can offer circumstances or proof that he did not know it, by proof of facts that are consistent with his innocence, then of course, that presumption of guilt from the possession of stolen property is overdone. The controlling force of the possession of stolen property grows weaker as the time of possession recedes from the time of the theft. So if this defendant has created in your mind, has offered testimony which creates in your mind a reasonable doubt as to whether he knew that these cars were stolen or not, then he is not guilty of this offense. The burden rests upon the government to prove his guilt beyond a reasonable doubt."

After the jury had been out for about twenty-four hours and had reported that they were unable to agree, the court, on its own motion, gave this instruction:

"There is but one issue of fact in the case really, and that is, did the defendant know at the time he stored and sold the cars that they were stolen. The fact that recently stolen property was in his possession makes a prima facie case against him, unless he gives an explanation which is consistent with innocence."

In fairness to the court, it should be said that in the original charge it had told the jury that the government must prove that the defendant did know that these cars were stolen beyond a reasonable doubt. It seems probable that the court did not intend that the jury should receive the impression that the burden of proof shifted from the government to the defendant or that the defendant was required to prove that his possession of the cars was innocent, in order to escape conviction, but we think that the jury must have understood from the language used that, unless the defendant himself had satisfied them that his possession was innocent, it was their duty to find that he knew that the cars were stolen when he received and stored them.

In Ezzard v. United States (C. C. A. 8) 7 F.(2d) 808, page 811, Judge Lewis, in writing the opinion, said:

"Presumptions or inferences of fact are not evidence, they are the result of evidence, and are raised on circumstances to supply the place of actual proof; when substantial proof is made contrary to the fact presumed, the presumption is rebutted. In civil cases they may sometimes fix the onus probandi, but not so in criminal on the main issue. There, on a plea of not guilty, the burden and quantum of proof to establish the corpus delicti and defendant's guilt never shifts. Lilienthal's Tobacco v. United States, 97 U. S. 237, 266, 267, 24 L. Ed. 901; Davis v. United States, 160 U. S. 469, 487 [16 S. Ct. 353], 40 L. Ed. 499. Where possession is the offense charged, the corpus delicti, and defendant's possession is shown, a verdict of guilty will stand in the absence of proof establishing an innocent possession. Feinberg v. U. S. (C. C. A.) 2 F.(2d) 955. But the writer is of opinion that a prima facie case is unknown in criminal procedure. In no condition of proof is it permissible to instruct a jury that it had become the duty of defendant to establish his innocence to obtain an acquittal."

Where the government in the trial of a criminal case introduces sufficient evidence to take the case to the jury, it is frequently said that it has made out a "prima facie" case; but we think that the words "prima facie" should be avoided in a charge to a jury, since they are not in common use among laymen and are likely to cause confusion of thought and misunderstanding.

While possession of recently stolen property may call for an explanation, it is not necessary that the explanation should come from the defendant, since it may arise from the evidence introduced by the government itself, or the testimony of the defendant's good character may rebut any possible inference of guilty knowledge which might otherwise arise from the possession.

"Proof of uniform good character should raise a doubt of guilty knowledge, and the

prisoner would be entitled to the benefit of that doubt. Proof of this kind may sometimes be the only mode by which an innocent man can repel the presumption [of guilt] arising from the possession of stolen goods." Edgington v. United States, 164 U. S. 361, 367, 17 S. Ct. 72, 74, 42 L. Ed. 467, quoting from Jupitz v. People, 34 Ill. 516.

Upon the theory which the lower court seems to have adopted in this case, all of the purchasers of these cars from the defendant would have been presumptively guilty of having received stolen automobiles, knowing them to have been stolen. The fact that the defendant had come into the possession of these cars shortly after they were stolen was a circumstance to be considered by the jury in connection with all of the other circumstances of the case in determining the question of his guilt or innocence. It was to be given its natural probative value and nothing more. It created at no time any presumption of law that the defendant knew that the cars were stolen, and, although it might have justified the inference, it compelled no finding to that effect, even though he failed to give a satisfactory explanation.

"The unexplained possession of goods recently stolen is entitled to more or less weight as an inculpatory circumstance, depending upon the facts of each case, and unless rebutted by the evidence or explanation of the accused the jury may act upon it. Wilson v. U. S., 162 U. S. 619, 16 S. Ct. 895, 40 L. Ed. 1090. The term 'recently' in this connection has no fixed and definite meaning, and is a variable term, depending upon other circumstances. Whart. Cr. Ev. § 759. There may be a theft of goods accompanied by such subsequent concealment of them, or they may be used for such purposes, that their possession several months after the theft may be presumptive evidence of guilt, to be weighed by the jury." Considine v. United States (C. C. A. 6) 112 F. 342, 349.

"Thus, if property recently stolen be found in the possession of a certain person, it may be presumed that he stole it, and such presumption is sufficient to authorize the jury to convict, notwithstanding the presumption of his innocence." Dunlop v. United States, 165 U. S. 486, 502, 17 S. Ct. 375, 381, 41 L. Ed. 799.

See, also, McNamara v. Henkel, 226 U. S. 520, 33 S. Ct. 146, 57 L. Ed. 330, in which the appellant was found standing in front of a car trying to crank it, near the building from which it had been taken. The court said (page 525 of 226 U. S., 33 S.

Ct. 146, 147): "Possession in these circumstances tended to show guilty participation in the burglary. This is but to accord to the evidence, if unexplained, its natural probative force."

"Possession of the fruits of crime recently after its commission justifies the inference that the possession is guilty possession, and, though only prima facie evidence of guilt, may be of controlling weight unless explained by the circumstances or accounted for in some way consistent with innocence. This presumption applies as well to a person charged with unlawfully receiving stolen goods as to one charged with its original taking." Wilkerson v. United States (C. C. A. 7) 41 F.(2d) 654, 657. See, also, Degnan v. United States (C. C. A. 2) 271 F. 291; Rosen v. United States (C. C. A. 2) 271 F. 651; Wilson v. United States, 162 U. S. 613, 16 S. Ct. 895, 40 L. Ed. 1090; Edwards v. United States (C. C. A. 8) 7 F.(2d) 598; Drew v. United States (C. C. A. 2) 27 F.(2d) 715; Niederluecke v. United States (C. C. A. 8) 47 F.(2d) 888; United States v. Di Carlo (C. C. A. 2) 64 F.(2d) 15, supra.

While the jury were entitled to know that the possession of these recently stolen cars by the defendant, if unexplained, would justify a finding that the defendant knew that they were stolen, they were also entitled to know that the force and effect of that circumstance as bearing upon the guilt of the defendant was for them to determine in the light of all of the other facts and circumstances shown by the evidence.

In Kasle v. United States (C. C. A. 6) 233 F. 878, an instruction substantially similar to that given in this case was disapproved. The court said (pages 889, 890, of 233 F.):

"It might be that the circumstances shown to have attended the possession of property involved in a given case, not to say the case in hand, would, if unexplained by defendant, naturally lead the jury to believe that he received the property with knowledge that it had been stolen; but to impute such knowledge as matter of law, is a different proposition. The effect of this, as it seems to us, was to impose the burden upon defendant to prove his innocence, in case the jury should find the goods had in fact been stolen."

 Upon the retrial of this case, the court should confine the testimony of the witnesses for the government to matters which are within their own knowledge, and not permit them to testify, over objection, to what some one

told them, or to give their opinions based upon hearsay. The testimony of a government witness that the notaries who acknowledged the bills of sale of the cars to the defendant could not identify the persons who signed the bills or did not know who they were was incompetent and prejudicial.

The defendant complains of the refusal of the court to grant his requested instruction with reference to the effect of character evidence, but no exception was taken to the instruction which the court gave covering that subject. The defendant was not entitled to have the jury instructed in any particular form of words. In Winter v. United States (C. C. A. 8) 13 F.(2d) 53, 59, we said:

"The jurors were told that this evidence of good character should be received and considered by them, in connection with all the evidence in the case, as bearing upon the question of reasonable doubt. This was sufficient, and this exception to the charge, as well as to the action of the court in refusing to give the instruction requested, is without merit."

The question of the accuracy of the court's charge with reference to this particular matter will not be considered, in the absence of an exception, but we take the liberty of calling attention to the cases of Winter v. United States (C. C. A.) 13 F.(2d) 53, supra, and Linde v. United States (C. C. A. 8) 13 F.(2d) 59, in which instructions as to the effect of evidence of good character were held to be proper.

The judgment is reversed, and the case remanded for a new trial.