**Arthur J. FREIJE, Defendant, Appellant,**
**v.**
**UNITED STATES of America,**
**Appellee.**

**Alfred SARNO, Defendant, Appellant,**
**v.**
**UNITED STATES of America,**
**Appellee.**
**Nos. 6913, 6914.**

United States Court of Appeals
First Circuit.

Heard Oct. 2, 1967.

Decided Dec. 18, 1967.

Clifford J. Ross, Manchester, N. H., with whom Eaton, Eaton, Ross & Moody, Manchester, N. H., were on brief, for appellant in No. 6913.

Matthias J. Reynolds, Manchester, N. H., with whom Robert A. Backus and Devine, Millimet, McDonough, Stahl & Branch, Manchester, N. H., were on brief, for appellant in No. 6914.

Louis M. Janelle, U. S. Atty., for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

During the period in question in these cases one Saia was the operator of an auto sales business in South Boston. This business was licensed and apparently possessed the external characteristics of a legitimate enterprise. In addition to Saia, the defendants Freije and Sarno, were connected with this business—Freije as a finder of potential customers in the Manchester, New Hampshire area, and Sarno as a salesman in Boston. The record does not indicate that they had any status other than that of employees.

These appeals arise from the conviction of Freije and Sarno for violation of 18 U.S.C. § 2312 (the Dyer Act).[1] The indictment which named Saia, Freije and Sarno as defendants was in twelve counts.[2]

On the first day of the trial and in the presence of the jury Saia pleaded guilty to the first six counts and the other counts against him were dismissed.[3] In addition, the U. S. Attorney dropped count XI which was against Freije.

Much of the government's case was presented by way of stipulation. Defendants acknowledged that the automobiles had been transported interstate and that they were indeed "stolen." It should be noted, however, that most of these cars were not stolen in the conventional sense of that word. Saia would order automobiles from dealers under a fictitious name, the arrangement apparently meeting no resistance from the dealers' credit department. Then while Saia kept up the monthly payments, Freije and Sarno sold the automobiles as "free and clear." It is uncontested that these automobiles were stolen within the meaning of the Dyer Act.[4]

Although the defendants stipulated that they had performed many of the acts alleged in the indictment, they

---

1. *"Transportation of stolen vehicles*

    "Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

2. The first six counts charge Saia alone with interstate transporation of stolen automobiles. Counts VII, X and XI charge Freije alone with this offense; Count VIII charges Sarno and Count IX names both Saia and Freije as defendants. Each of these counts applies to a different automobile and Count XII charges a conspiracy against all three defendants under 18 U.S.C. § 371.

3. The first six counts remained in the case only by virtue of the conspiracy charge (count XII) against Freije and Sarno.

4. Defendant Sarno suggests that there was no evidence that the count VIII automobile was stolen, that in effect the government stipulated itself out of a case. It is clear from the record, however, that the trial was conducted on the basis that the car was repossessed because it was a mortgaged automobile.

    Mr. McCarthy: (Assistant U. S. Attorney) "With respect to the buyers of originally mortgaged vehicles and with respect to the final purchases of cars obtained by larceny, the evidence shows that these motor vehicles were all repossessed and returned to the rightful owners.

    Mr. Freije and Mr. Sarno, do you stipulate to this?"

    Arthur J. Freije: "I do not contest."

    Alfred Sarno: "I do not contest it."

    Thus, since it was not free and clear when sold it was "stolen."

denied they did so with guilty knowledge. This question of intent, together with certain alleged irregularities in the conduct of the trial, constitutes the basis for these appeals.

The defendants left the government to prove intent and now contend that it was aided unfairly by the court's instruction to the jury concerning possession of recently stolen property.[5] Undoubtedly, this instruction would be adequate in the case of an individual whose possession of a vehicle other than his own has no relation to his occupation. But what inference should be drawn, for example, from the fact that a salesman for a reputable dealer in one state unknowingly sells a stolen car to a customer in another? Is it enough for the court after spelling out that "ordinarily" possession justifies the felonious inference, to add that "other facts and circumstances" may satisfactorily explain such possession?

■■ Although circumstantial evidence is perfectly proper, care must be had that only those inferences that are supported by human experience be drawn. The Supreme Court has long since condemned raising the doctrine of possession of recently stolen property to the status of a presumption. Bollenbach v. United States, 326 U.S. 607, 66 S.Ct. 402, 90 L. Ed. 350 (1946). While *Bollenbach* is usually read as prohibiting only a presumption and not a permissible inference, Bray v. United States, 113 U.S.App.D.C. 136, 306 F.2d 743 (1962); Battaglia v. United States, 205 F.2d 824 (4th Cir. 1953), not even an inference can be jus-

tified here. The doctrine of possession of recently stolen property may find no legitimate application where an employee sells merchandise for a company doing public business. Cf. Barnes v. United States, 341 F.2d 189 (5th Cir. 1965). It is no answer to say that these defendants should not be treated as ordinary employees since they knew that the business was not bona fide. This would presuppose the very point in issue. To the extent that the government presented proof that the defendants knew the real nature of Saia's activities, it was entitled to any legitimate inference therefrom. There was serious question, however, as to the weight of the inference from the fact of defendants' possession of the automobiles.

■■ Here, as we have noted, there was no evidence that Freije and Sarno were anything other than employees. There was, however, evidence of a long series of free and clear sales of encumbered vehicles. We do not go so far as to say that no instruction should be given as to an inference arising from inadequately explained possession. But, where, as here, there is evidence that possession of vehicles is part of their job, defendants have met their burden of coming forward with an explanation.[6] The explanation may be disbelieved if there were no evidence other than assertion of their status as employees; or it may be deemed inconsequential if the jury felt that their employer were merely a front for illegal operations and that the defendants were aware of these opera-

5. "If you should find beyond a reasonable doubt from the evidence in the case that the cars transported in the indictment were stolen and were transported in interstate commerce as charged, and that, while recently stolen, the property was in the possession of the accused in another state than that in which it was stolen, the jury would ordinarily be justified in drawing from these facts the inference that the cars were transported or caused to be transported in interstate commerce by the accused with knowledge that it was stolen, unless possession of the recently-stolen property by the accused in such other state is explained to

the satisfaction of the jury by other facts and circumstances in evidence in the case."

6. Defendants' "explanation"—that they were employees of an established auto sales business—is pointedly distinguishable from the implied admission of the defendant in Vitali v. United States, 383 F.2d 121 (1st Cir. Oct. 11, 1967) that the locus where stolen goods were found was his establishment. The mere employee, insofar as an inference based on possession is concerned, has the initial benefit of insulation which the owner-operator does not enjoy.

tions. But the explanation is entitled at least to separate acknowledgment in the charge as sufficient, if believed, to negate any artificial inference of knowledge arising from the mere fact of possession. The inference can still be drawn by the jury, but not automatically; it must first find the explanation unworthy of belief. In this case we hold that the trial court's blanket reference to "other facts and circumstances" inadequately confronted the jury with the decision it must make before relying on the inference stemming from possession.

■ The government maintains that whatever merit there may be to this point, the defendants cannot raise it now because their objection to the instruction in the district court was too general. It is true that one must state distinctly the grounds of his objection to an instruction. Fed.R.Crim.P. 30; Harding v. United States, 377 F.2d 254 (8th Cir. 1964), but in this case we think counsel for Freije objected quite distinctly.[7] We believe the error here is of sufficient gravity to remand the case for a new trial.

■ In view of this we do not reach defendants' further contention that the trial court committed plain error in allowing the government to treat Saia's guilty plea as evidence against them. We think it appropriate, however, to note that it was certainly error. The record is replete with references to this guilty plea and it is apparent that the trial was conducted on the basis that this was admissible evidence.

■■ It is generally held that it is proper to receive the guilty plea of a codefendant, even in the presence of the jury, but this presupposes that cautionary instructions are given. United States v. Kahn, 381 F.2d 824, 836–838 (7th Cir. 1967); United States v. Crosby, 294 F.2d 928 (2d Cir. 1961), cert. denied, 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523 (1962).[8] In this instance, although the trial judge referred to the plea in his charge, he did not give the usual cautionary instructions. It is surprising that defendants did not object to this procedure since it is well established that a plea of a codefendant is not admissible as evidence against the remaining defendants. United States v. Restaino, 369 F.2d 544 (3d Cir. 1966); Koolish v. United States, 340 F.2d 513 (8th Cir.), cert. denied, 381 U.S. 951, 85 S.Ct. 1805, 14 L.Ed.2d 724 (1965); Babb v. United States, 218 F.2d 538 (5th Cir. 1955); United States v. Toner, 173 F.2d 140 (3d Cir. 1949). While not here deciding whether there was plain error within the meaning of Fed.R.Crim.P. 52(b), we take occasion to mention this matter for the court's guidance in the new trial of this case.

Judgments will be entered vacating the judgments of the district court, setting aside the verdicts and remanding the cases for a new trial not inconsistent with this opinion.

---

7. "If it please the Honorable Court, in behalf of the defendant Freije, I would like to respectfully object to the Court's instruction which appeared as No. 3 of the Government's Requests for Instructions relating to fresh acquisition of property on the ground that this doctrine should not relate to a situation where the accused received the property in question from a company or organization that did business publicly and thus had apparent authority to sell and apparent ownership of what it attempted to sell."

Counsel for Sarno also objected but did not detail his reason. It is clear that he was merely echoing the objection of his brother.

8. In Wood v. United States, 279 F.2d 359, 362 (8th Cir. 1960), the court quoted from the instruction given in the district court: "These pleas do not give rise to any inference as to the guilt of the remaining defendants here on trial. The guilt or innocence of the defendants still on trial must be determined solely by you, solely by the evidence introduced in the trial of this case."