**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Daniel BONNETTS,
Defendant-Appellant.**

No. 83–2672.

United States Court of Appeals,
Seventh Circuit.

Argued June 4, 1984.

Decided Nov. 5, 1984.

Rehearing and Rehearing En Banc
Denied Dec. 6, 1984.

---

Maren Dougherty, Chicago, Ill., for defendant-appellant.

Evan M. Spangler, Asst. U.S. Atty., Hammond, Ind., for plaintiff-appellee.

Before BAUER, EDWARDS,[*] and ESCHBACH, Circuit Judges.

ESCHBACH, Circuit Judge.

Daniel Bonnetts was convicted of transporting, storing, and concealing stolen motor vehicles in violation of 18 U.S.C. §§ 2312 and 2313. On appeal, he challenges the use of a jury instruction concerning the permissible inference from possession of recently stolen property and the sufficiency of the evidence. Finding no error, we affirm.

I.

On March 14, 1982, Donald Basista, an Indiana police officer, photographed several automobiles parked in front of defendant's home in Gary, Indiana. Basista checked the license plates on the cars and determined that the Illinois license plates on a 1979 Ford Thunderbird were registered to the defendant's 1968 Cadillac. Basista took no further action at that time,

but returned in November 1982. The Thunderbird was still parked in front of defendant's house, as was a 1981 Pontiac. Basista determined that the Pontiac had been reported stolen three days earlier in Chicago, and contacted the FBI. An FBI agent confirmed that the Pontiac had indeed been reported stolen, and attempted to check the vehicle identification number ("VIN") on the Thunderbird. The public VIN (located on the car's dashboard) was obscured by papers, so the agent copied the VIN located inside the door on the driver's side of the car and determined that the Thunderbird was also stolen.

The cars were impounded and processed for evidence. Examination of the cars revealed that the public VIN had been removed from the Thunderbird's dashboard and the driver's door lock on the Pontiac had been pulled. Photographic negatives found in the Thunderbird were processed and produced pictures of Bonnetts' wife and children. No fingerprints identifiable as the defendant's were found in the cars.

In the interim between the visits to the defendant's home, Bernard Stahl, a Chicago police officer, observed a tow truck pulling a Ford Bronco driving in the direction of Indiana on the Chicago Skyway. Both the tow truck and the Bronco bore Illinois license plates, and Stahl thought it unusual that they should be traveling to Indiana. He radioed the Bronco's license number to the police dispatcher but was told that the Bronco had not been reported stolen. Soon after Stahl exited from the Skyway, however, the dispatcher radioed that the Bronco had been reported stolen. Stahl got back on the Skyway and stopped the tow truck, which was being driven by the defendant, one mile inside Indiana. When the defendant stated that he had no papers authorizing the tow, he was arrested. An examination of the Bronco by its owner revealed that the ignition lock had been broken.

---

[*] The Honorable George Clifton Edwards, Jr., Circuit Judge for the Sixth Circuit, sitting by designation.

Bonnetts was charged in a four-count indictment with transporting the stolen Bronco in interstate commerce, 18 U.S.C. § 2312 (Count I), storing the stolen Pontiac, 18 U.S.C. § 2313 (Count II), storing the stolen Thunderbird, 18 U.S.C. § 2313 (Count III) and concealing the Thunderbird, 18 U.S.C. § 2313 (Count IV). Bonnetts' primary defense at trial was that he lacked knowledge that the automobiles were stolen because he had received them in the course of his employment with R & R Auto Repair ("R & R") in Chicago. R & R's secretary testified that the Thunderbird had been brought to the defendant at R & R by a man she identified as "Mike" for a paint job. Thereafter, the defendant told her to give the car to his wife to drive, and she complied. The secretary also testified that she had received a tow request for the Bronco from a man identified as "Mike" and had dispatched Bonnetts to tow the truck.

Bonnetts was convicted by a jury of Counts I, III, and IV, and acquitted of Count II. The government moved to dismiss Count III at sentencing, and the defendant was sentenced to five years imprisonment on Count I and a consecutive three years imprisonment on Count IV.

## II.

▮ In order to sustain its burden of establishing the defendant's guilt under 18 U.S.C. §§ 2312 and 2313, the government was required to prove that the defendant knew the Bronco and the Thunderbird were stolen. *United States v. Madison*, 689 F.2d 1300, 1312 (7th Cir.1982) (§ 2312—transporting), *cert. denied*, 459 U.S. 1117, 103 S.Ct. 754, 74 L.Ed.2d 971 (1983); *United States v. Thomas*, 676 F.2d 239, 242 (7th Cir.1980) (§ 2313—concealing), *cert. denied*, 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 364 (1981). The Bronco was recovered from the defendant within hours of being reported stolen and the Thunderbird was first delivered to R & R three weeks after its theft. Accordingly, the trial judge instructed the jury that it might infer the defendant's knowledge that the cars were stolen from the defendant's unexplained possession of recently stolen property.

The defendant takes issue with the instruction, arguing that it was erroneous as given and that in any event it was not warranted by the facts of this case. We will examine these arguments in turn.

### A. Contents of Instruction

▮ The instruction given in this case was taken almost verbatim from the instruction on the permissible inference from possession of recently stolen property approved for use in this circuit. *See* II Fed. Crim.Jury Instructions of the 7th Cir. at 2 (1984). The defendant does not argue that any part of the instruction incorrectly states the law.[1] Rather, he argues that

---

**1.** The instruction was given as follows:

Possession of property recently stolen, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find, in the light of surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen.

The term "recently" is a relative term, and has no fixed meaning. Whether property may be considered recently stolen depends on the nature of the property, and all the facts and circumstances shown by the evidence in the case. The longer the period of time since the theft, the more doubtful becomes the inference which may reasonably be drawn from unexplained possession.

If you find beyond a reasonable doubt from the evidence in the case that a motor vehicle described in the indictment was stolen and that while recently stolen, the motor vehicle was in the possession of the accused, you may from those facts draw the inference that the motor vehicle was possessed by the accused with knowledge that the motor vehicle was stolen, unless possession of the recently stolen property by the accused is explained to the satisfaction of the jury by other facts and circumstances in evidence in the case.

In considering whether possession of recently stolen property has been satisfactorily explained, you are reminded that, in the exercise of constitutional rights, the accused need not take the witness stand and testify.

There may be opportunities to explain possession by showing other facts and circumstances, independent of the testimony of the accused.

You will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling witnesses or producing any evidence.

such an instruction is only correct if it contains an explicit statement that the jury is never required to draw the inference.[2] Without such a statement, the defendant reasons, a jury might believe that it is required to draw the inference unless the defendant explains his possession satisfactorily, thus impermissibly shifting the burden of proof to the defendant.

We reject the defendant's argument that the instruction in this case shifted the burden of proof on the issue of knowledge to him. The jury was repeatedly told that the inference was permissive, and that it *might* draw the inference if it was supported by the facts and circumstances of the case. The jury was further told that the defendant need not testify or present any evidence, and that it was the exclusive province of the jury to determine whether the facts warranted any such inference in this case. The instruction given here is in no way similar to the instructions condemned in the cases cited by defendant. *See McKnight v. United States*, 309 F.2d 660, 661 (D.C.Cir.1962) (exclusive possession of recently stolen property is "sufficient to support a verdict of guilty"); *United States v. Lefkowitz*, 284 F.2d 310, 313 (2d Cir.1960) (burden of explaining possession on those holding stolen goods; jury should consider whether "defendant has explained ... facts which would enable you to conclude that he was innocent"); *United States v. Allegrucci*, 258 F.2d 70, 73 (3d Cir.1958) (same); *Brubaker v. United States*, 183 F.2d 894, 898 (6th Cir.1950) ("possession of stolen property raises a presumption of guilt"); *McAdams v. United States*, 74 F.2d 37, 40 (8th Cir.1934) (possession "prima facie evidence that possessor knows of guilty possession"; defendant must offer "proof that he did not know [property was stolen before] presumption of guilt ... is overdone"). The

instructions cited by defendant suffer from two defects not present in this case: they either raise the inference of guilty knowledge to a presumption, *see McKnight, supra; Brubaker, supra; McAdams, supra;* or they require the defendant to prove his innocence, *see Lefkowitz, supra; Allegrucci, supra; McAdams, supra.*

Considering the instruction given as a whole, we find no language that would suggest that the jury was required to infer guilty knowledge or that the defendant was required to produce any evidence. The Supreme Court has noted that the "practical effect of instructing the jury on the inference arising from the unexplained possession of recently stolen property is to shift the burden of going forward with evidence to the defendant." *Barnes v. United States*, 412 U.S. 837, 846 n. 11, 93 S.Ct. 2357, 2363 n. 11, 37 L.Ed.2d 380 (1973). As the Court made clear in *Barnes*, however, the instruction remains proper where, as here, it does not shift the burden to the defendant to prove his innocence, imply that he is forced to take the stand, or treat the inference as a presumption.

### B. Propriety of Instruction in This Case

The defendant advances several arguments in support of his position that the instruction should not have been given in this case. First, he argues that the instruction should never be given when a defendant contends that he gained possession of the stolen property during the course of his employment. Second, he argues that the instruction should not have been given in regard to the Thunderbird because the government never established his possession of that automobile.

In support of his first argument, the defendant relies primarily on *Freije v.*

---

It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in the case warrant any inference which the law permits you to draw from possession of recently stolen property. If any possession the accused may have had of recently stolen property is consistent

with innocence, or if you entertain reasonable doubt of guilt, you must acquit the accused.

2. The defendant does not appear to have tendered an instruction containing the language he wanted. His trial objections centered on whether the instruction should have been given at all.

*United States,* 386 F.2d 408 (1st Cir.1967), *cert. denied,* 396 U.S. 859, 90 S.Ct. 129, 24 L.Ed.2d 111 (1969). In *Freije,* there was no evidence that the defendants were anything but employees of an automobile dealership that to all outward appearances was a bona fide business. The operator of the dealership bought cars from other dealers on time and then kept up the monthly payments while the defendants, his salesmen, sold the cars as unencumbered. The court did not hold that the trial judge erred in giving the instruction concerning possession of recently stolen property. Rather, it held that under the facts of that case, the defendants' innocent explanation was entitled to a separate acknowledgment in the jury charge. *Id.* at 414. We note that the trial court in the instant case instructed the jury that Bonnetts' theory of defense was that he had dealt with the Thunderbird and the Bronco "with the sincere and genuine belief that he had the owner's consent."

■ *Freije* is not support for defendant's argument that the instruction should never be given where the defendant claims to have gained possession during the course of his employment. There may be a case where the evidence supporting defendant's innocent explanation is so overwhelming that no inference could be justified. If such a case exists, this is not it.

Defendant's claim that he gained possession of the automobiles in the course of his employment is based on the testimony of R & R's secretary, Ms. Konzen, who testified that the defendant was an employee of that establishment and who furnished an explanation of how defendant came into possession of the cars. However, Konzen admitted that R & R kept no records of defendant's work, nor did it pay the defendant or bill customers for work the defendant performed. The jury could easily have disbelieved Konzen's testimony that Bonnetts was, in fact, employed by R & R.

Moreover, the jury could also have discounted the secretary's explanation for defendant's possession. Konzen testified that a man she could identify only as

"Mike" brought the Thunderbird to the defendant at R & R in December 1981, ostensibly for a paint job. Although Konzen testified that Mike called to inquire about the car in January, no work was ever performed on the car. Instead, the defendant told Konzen to give the car to his wife. The car was seized in front of defendant's house eleven months after the defendant claims it was brought to him for a paint job. "Mike" never came forward at trial. *See United States v. Parent,* 484 F.2d 726, 733 (7th Cir.1973) ("Bona fide business transactions customarily involve other persons. No such exculpatory witness[ ] appeared in this case."), *cert. denied,* 415 U.S. 923, 94 S.Ct. 1427, 39 L.Ed.2d 479 (1974).

Konzen testified that she received a call from a man identified only as "Mike" [3] requesting a tow for a Ford Bronco. According to Konzen, Mike requested that the Bronco be towed to 106th Street and Buffalo in Chicago. However, when the defendant was apprehended with the Bronco, he had passed the exit for 106th and Buffalo, and was headed away from R & R.

The Supreme Court noted in *Barnes, supra,* that "the mere fact that there is some evidence tending to explain the defendant's possession consistent with innocence does not bar instructing the jury on the inference." 412 U.S. at 845 n. 9, 93 S.Ct. at 2362 n. 9. In rejecting the argument that the instruction was erroneously given in *United States v. Johnson,* 515 F.2d 730, 733 (7th Cir.1975), we stated: "It is true, as appellant urges, that the record contains an 'explanation' for his possession, but the law does not require the jury to credit his explanation or to accept it as satisfactory."

■ Defendant's second argument is that the government never established his possession of the Thunderbird. We disagree. The evidence established that the car was delivered to Bonnetts at R & R and that a few days later, Bonnetts directed Konzen to give the car's keys to his wife. It was not necessary for the government to

---

**3.** It is unclear from the record whether the two "Mikes" are different persons.

prove that Bonnetts remained in sole control of the Thunderbird from the time of its delivery until the time of its recovery eleven months later. It was only necessary that the government establish "such a nexus between the defendant and the goods that it is reasonable to treat the extent of the defendant's dominion and control as if it were actual possession." *United States v. Parent, supra,* 484 F.2d at 732 (*quoting United States v. Casalinuovo,* 350 F.2d 207, 209 (2d Cir.1965)). *See also United States v. Catalano,* 450 F.2d 985 (7th Cir. 1971) (constructive possession enough), *cert. denied,* 405 U.S. 928, 92 S.Ct. 980, 30 L.Ed.2d 802 (1972); *United States v. Cousins,* 427 F.2d 382 (9th Cir.1970) (same). We believe that the evidence is sufficient to demonstrate the defendant's control over the Thunderbird. The car was delivered to the defendant at R & R (Konzen testified that Mike had called the week before the car was delivered to tell Bonnetts to expect it). The defendant exercised control over the car by directing Konzen to give the car's keys to his wife. That the car may not have remained in the defendant's sole possession does not vitiate this evidence that establishes that the defendant constructively possessed the car for purposes of the statute.[4]

### III.

■ The defendant contends that the evidence was insufficient to establish that he concealed the Thunderbird, arguing that the government produced no evidence connecting him with the removal of the dashboard VIN or the change in the license plates. The defendant relies primarily on *United States v. Miller,* 664 F.2d 94 (5th Cir.1981), *cert. denied,* 459 U.S. 854, 103 S.Ct. 121, 74 L.Ed.2d 106 (1982) and *United States v. Casey,* 540 F.2d 811 (5th Cir. 1976), both of which hold that in order to establish concealment under § 2313, the government must prove that the defendant

performed some overt physical act designed to conceal the automobile.

In both *Casey* and *Miller,* the courts were presented with the question of whether what the defendant had done constituted a physical act of concealment. There is no question that altering a vehicle identification number or changing the license plates on a stolen car constitute such physical acts. *See e.g., United States v. Pichany,* 490 F.2d 1073, 1075 (7th Cir.1973) (altering VIN and changing plates); *United States v. Brady,* 425 F.2d 309, 312 (8th Cir.1970) (changing plates); *United States v. Meek,* 388 F.2d 936, 938 (7th Cir.) (same), *cert. denied,* 391 U.S. 951, 88 S.Ct. 1855, 20 L.Ed.2d 866 (1968). The question here is whether the government presented proof that the defendant did either of these acts.

Initially, we agree with the defendant that nothing at trial established that the defendant removed the VIN. The car came into defendant's possession three weeks after it had been stolen and there was no evidence that the VIN was still on the car at that time.

In its closing argument to the jury, the government argued that the license plates from defendant's Cadillac had been placed on the Thunderbird at his direction. At oral argument in this court, the government conceded that there was no evidence that the defendant directed that the plates be changed. In fact, Konzen testified that she directed an R & R employee to take the plates from the Cadillac and put them on the Thunderbird so that Mrs. Bonnetts could drive the car home.

We do not believe, however, that the fact that Konzen, rather than defendant, directed that the plates be changed is fatal to the government's case. The Cadillac, and its license plates, were registered to defendant. The defendant allowed the license plates to remain on the Thunderbird, which was parked in front of defendant's house

---

**4.** The defendant also argues that the time of possession was too remote from the time of theft to warrant an instruction. He offers no authority for his claim that a lapse of three weeks renders the instruction erroneous. *Cf.*

*Altom v. United States,* 454 F.2d 289, 294 (7th Cir.1971), *cert. denied,* 406 U.S. 917, 92 S.Ct. 1765, 32 L.Ed.2d 116 (1972) (lapse of 15 months).

for eleven months. The defendant cannot claim that he was ignorant of the fact that his own license plates were on the Thunderbird; rather, he argues that he should be acquitted of concealment because he did not place them on the car himself. We believe that defendant's acquiescence in Konzen's act established the requisite element of concealment under the statute.[5]

## IV.

For the reasons stated above, the judgments of conviction are affirmed.

---

**5.** We do not here hold that such acquiescence always establishes concealment for purposes of § 2313. We merely hold that under the facts of this case, where the license plates placed on the stolen car belonged to the defendant and the concealed car remained in defendant's possession for eleven months after the change, he cannot escape liability merely because he did not perform the physical act himself.